# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE NO.: 1:18-CR-26-HAB |
| JOSE A. HUITRON-JIMENEZ | |

**OPINION AND ORDER**

The Defendant, Jose A. Huitron-Jimenez, pled guilty to possessing with intent to distribute more than 100 kilograms of marijuana, a violation of 21 U.S.C. § 841(a)(1), and re-entry of a deported alien, a violation of 8 U.S.C. § 1326(a). An officer with the United States Probation Office prepared a Presentence Investigation Report (PSR) in anticipation of the Defendant's sentencing.

Count 1 carries a statutory mandatory minimum penalty of five years imprisonment. However, the Defendant meets the criteria set out in 18 U.S.C. § 3553(f)(1)–(5) and § 5C1.2(a)(5) of the Sentencing Guidelines. Therefore, the Court shall sentence him without regard to the statutory minimum. Based on the Defendant's offense level (19) and criminal history category (I), the Guideline range of imprisonment is 30–37 months. With respect to the Guideline range, the Defendant objects to the PSR's failure to allocate to him a reduction for his mitigating role in the offense. The Court conducted an evidentiary hearing and the parties submitted argument through written briefs. The objection is ripe for ruling.

**ANALYSIS**

**A.     The Offense**

On February 27, 2018, Corporal Jason House of the Indiana State Police (ISP), received a telephone tip that a large shipment of marijuana was being transported inside charcoal bags in a

white van. The van was occupied by two Hispanic males and was traveling southbound on Interstate 69. According to the caller, the destination was Marion, Indiana. The caller also provided the van's license plate number.

About twenty-five minutes after receiving the tip, ISP Master Trooper Gary Shenfield conducted a traffic stop of the van for a moving violation. Neither the Defendant, who was driving, nor his passenger, were able to produce a registration for the vehicle and the Defendant did not have a driver's license. A narcotics certified canine alerted to the presence of narcotics on the passenger's side door. A charcoal bag inside the rear passenger door contained a bundle of green plantlike material. A search warrant was executed, which revealed 561 pounds of marijuana inside the van.

The Defendant pled guilty to the drug offense on August 7, 2018. In a proffer interview conducted that same day, the Defendant provided additional details. He stated that the charcoal bags in the van he was driving came from Mexico. The Defendant resided with the passenger of van, Yair Guadalupe Burgos Bojorques, who was in charge of the Fort Wayne portion of the drug trafficking operation. Borjorques would tell the Defendant when a load of narcotics was arriving, and the Defendant offered to help. The Defendant advised that he delivered about eight loads of charcoal bags containing marijuana (coal). The loads were delivered to Fort Wayne, Marion, and Columbus, Ohio. Each time, he was to drive the vehicle to a parking lot and leave the keys under the floor mat. The Defendant would wait at a nearby retail store until he received a call that the van was unloaded. He would then return to Fort Wayne. The Defendant expected to be paid $800 for each load he delivered but had not yet received payment. The Defendant was provided with some money from time to time, upon his request, but he did not state the amount he received.

The Defendant described a stash house in Harlan, Indiana. The marijuana would arrive at the house by semi tractor trailer where it would be put into other vehicles for distribution. The Defendant advised that one of the vehicles, a green Honda Accord, could hold one hundred pounds. The Defendant was unsure how much marijuana was inside the van he was delivering to Marion the day he was stopped. He also stated that he saw about three thousand pounds of marijuana in charcoal bags at the stash house, but he was not present when the semi tractor trailer made the deliveries.

According to the Defendant, the drug trafficking operation had three drivers who would deliver the coal. The Defendant knew the nickname of the head of the operation in Mexico, and where he is from, but had never seen him or talked to anyone from Mexico. The Defendant talked to Boujorques, who also accompanied him on deliveries.

**B.    Mitigating Role Reduction**

The Defendant argues that he should receive a reduction in his offense level because he was a minimal participant. The Defendant asserts that his role was to drive a van pre-loaded with marijuana to a drop off destination. He notes that he was not involved in the purchasing, packaging, loading, unloading, delivery, or sale of the marijuana. Neither was he entrusted with transporting drug proceeds.

The Guideline provision at issue, § 3B1.2, provides for a 2, 3, or 4-level reduction in the offense level if more than one participant was involved in the offense, U.S.S.G. § 3B1.2, cmt. n.2, and the defendant played a mitigating role. A defendant is considered a minimal participant— entitled to a 4-level reduction—if he is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n.4. Among the least culpable are those who lack knowledge or understanding of the scope and structure of the enterprise and of the activities of

3

others. *Id.* By comparison, a minor role adjustment of 2 points is appropriate if the defendant is "substantially less culpable than the average participant," but whose role could not be described as minimal. U.S.S.G. § 3B1.2, cmt. n.3(A) & n.5; *United States v. Haynes*, 582 F.3d 686, 709 (7th Cir. 2009). If a defendant falls between minimal and minor, a reduction of 3 points is appropriate. U.S.S.G. § 3B1.2.

The defendant bears the burden of demonstrating, by a preponderance of the evidence, that he is entitled to a role reduction. *Haynes*, 582 F.3d at 709. The Court must evaluate the Defendant's role "in context of the other participants in the scheme, keeping in mind that a minor [or minimal] player is substantially less culpable than the average participant, not the leaders. *United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011) (citing *United States v. Sorich*, 523 F.3d 702, 717 (7th Cir. 2008)); *see also United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007) (holding that when assessing whether a defendant is entitled to a role reduction, his role "should be compared to that of the average member of the conspiracy, not with the leaders"). Drug couriers play an important role in the drug distribution scheme, *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 960 (7th Cir. 2004); *United States v. Hamzat*, 217 F.3d 494, 498 (7th Cir. 2000), but they are neither automatically entitled to nor precluded from receiving a role reduction under § 3B1.2, *Leiskunas*, 656 F.3d at 739; *United States v. Saenz*, 623 F.3d 461, 467–68 (7th Cir. 2010) ("[A]ll drug couriers are not alike. Some are sophisticated professionals who exercise significant discretion, others are paid a small amount of money to do a discrete task.")

This is not a conspiracy case where the Defendant is being held responsible "for the reasonably foreseeable quantity of drugs sold by his or her co-conspirators." *United States v. Seymour*, 519 F.3d 700, 710–11 (7th Cir. 2008). The Defendant's Guideline calculation is based on the quantity of drugs contained in the van that the Defendant was driving. Nevertheless, a

defendant, whose participation in an offense is limited to transporting or storing drugs and who is accountable under U.S.S.G. §1B1.3 only for the quantity of drugs the defendant personally transported or stored, may receive a mitigating role adjustment. U.S.S.G. § 3B1.2, Application note 3(A)); *see also United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007) (citing *United States v. Rodriguez–Cardenas*, 362 F.3d 958, 961 (7th Cir. 2004)).

The Defendant asserts that his lack of knowledge or understanding of the scope and structure of the enterprise and the activities of others, his role as a mere courier, the fact that he did not load or unload the drugs from the vehicles, and the minimal payment for his services, all support the conclusion that he was a minimal participant. The Defendant believes that he is substantially less culpable than, at least, those individuals who were on the front-end of the transaction supplying and purchasing the marijuana for delivery and those who were, on the back-end, re-packaging and distributing the marijuana.

The facts of this case do not support a conclusion that the Defendant was plainly among the least culpable of the participants. There were other drivers who, presumably, held much the same role as the Defendant. The Court does not have any evidence to suggest that these other drivers were somehow more culpable. Moreover, the low level "mule," as the term is used in drug trafficking, tends to have little knowledge of what is being transported, limited knowledge of the entire organization, and no knowledge of the location of a stash house. Rather, they are given last minute notice and told the basics of where to go and what to do.

The Defendant knew that he was transporting large quantities of marijuana and that the drugs arrived by semi-tractor trailer from Mexico. He knew the nickname of the leader of the drug trafficking organization in Mexico. The Defendant had also been to the stash house when large quantities of marijuana were present. Because the Defendant lived with the leader of the Fort

5

Wayne portion of the operation, it was not necessary for him to speak to others in the organization. The Defendant's claim that he had not been paid for any of the loads that he delivered, despite the agreement that he would be paid $800, is not a credible statement that assists the Court in clarifying the Defendant's level of participation with respect to the drug operation's average participant. It defies logic that the Defendant would have continued to transport large amounts of marijuana, worth millions of dollars, without any financial benefit, particularly as nothing in the record suggests that the Defendant had a motive outside financial profit. The Defendant has not shown, by a preponderance of the evidence, that he was a minimal participant.

The Court must still determine whether the Defendant was substantially less culpable than the average participants. Part of the problem in this case is identifying an average participant. The Court has information about Boujorques to suggest his role was greater than that of the Defendant's role, but not much information to discern whether Boujorques was an average participant. The Defendant identified himself as one of three drivers who delivered marijuana from the stash house to other locations. That, in and of itself, is not particularly helpful. It is possible that all the drivers were average participants. It may also be that the drivers were less culpable than other, average, participants. This is not a case where the Court has numerous codefendants or groups of defendants to compare, yet the Court is still tasked with a conducting a fact-intensive inquiry.

The Court finds that it can surmise the various roles that would typically exist in an operation involving large quantities of marijuana being transported from Mexico for distribution in Indiana and Ohio. The Court, having considered these various roles, finds that the Defendant is entitled to a two-level reduction, as the Defendant was likely less blameworthy than the average member of the drug operation. Without comparing the Defendant to the leaders, or to the least culpable members, the Court can still acknowledge that the Defendant did not make any telephone

calls to connect members of the operation or to act as an intermediary. Neither was he entrusted to collect or transport drug proceeds or to maintain essential records. Although the Defendant was aware of the location of the stash house and visited it when drugs were present, there is no evidence to show that he had unfettered access to the stash house, or that he was aware, in advance, when a shipment would be arriving. The Government does not assert that the Defendant provided the van used to transport drugs, or that he kept the van in his name.

Acknowledging that this case presents a close call, the Court concludes that the Defendant's discrete task, although important, was not part of a role within the operation that placed the Defendant on par with an average participant.

**C.     Cooperation**

A sentencing court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a § 5K1.1 motion. *Leiskunas*, 656 F.3d at 737 (first citing *United States v. Knox*, 573 F.3d 441, 453 (7th Cir. 2009); then citing *United States v. Richardson*, 558 F.3d 680, 681–82 (7th Cir. 2009)). Here, the Defendant argues that the Court should consider his cooperation as a basis to reduce his sentence because the information he provided to the Government exceeded what was required for him to receive the benefit of the safety valve, U.S.S.G. § 5C1.2(a)(5).

Congress enacted the safety valve statute, § 3553(f), to allow certain nonviolent, first-time drug offenders who were not organizers of criminal activity to avoid the application of statutory mandatory minimum sentences if they cooperated with the government. *United States v. Arrington*, 73 F.3d 144, 147 (7th Cir. 1996). The statute sets forth five criteria that a defendant must satisfy to be eligible to receive a sentence without regard to the mandatory minimum. The final factor concerns the information the defendant provides to the government:

>   (5) not later than the time of the sentencing hearing, *the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan*, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(5) (emphasis added). The statutory language of § 3553(f) is duplicated in Guideline § 5C1.2(a)(1)–(5). The defendant bears the burden of proving that he has made a "full and honest disclosure." *United States v. Acevedo-Fitz*, 739 F.3d 967, 970 (7th Cir. 2014) (quoting *United States v. Montes*, 381 F.3d 631, 637 (7th Cir. 2004)).

The disclosure of information extends to offenses that were part of the same course of conduct or of a common scheme or plan. U.S.S.G. § 5C1.2(a)(5). This means the "offense of conviction and all relevant conduct." *Id.*, cmt. n.3. Relevant conduct, in turn, includes:

>   (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
>   (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1).

In light of this standard, the Defendant's claim that his proffer to the Government exceeded what was required of him under § 5C1.2(a)(5) is without merit. Nonetheless, the Court acknowledges that it maintains discretion to consider the Defendant's cooperation, as well as other factors related to the nature and circumstances of the offense and the history and characteristics of the Defendant to determine the sentence that is sufficient, but not greater than necessary, to comply with the purposes of punishment:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons stated above, the Court SUSTAINS IN PART the Defendant's objection to the PSR. The Court finds that the PSR should be revised to include a two-level reduction in the Defendant's base offense level for his minor role in the offense.

ENTERED on August 1, 2019.

                                            s/ *Holly A. Brady*
                                            JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT